**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TRIAXIAL MEDICAL, INC.,**

**Plaintiff,**

**v.**                                                    **Case No:  6:11-cv-1278-Orl-22GJK**

**DAVID STRINGHAM, REFERRAL**
**EXPERTS, LLC and BEVERLY HILLS**
**PHYSICIANS ASSOCIATES, INC.,**

**Defendants.**

_____

# ORDER

This cause came on for consideration without oral argument on the following motions

filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANTS DAVID STRINGHAM AND REFERRAL EXPERTS, LLC'S MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION (Doc. No. 30)** |
| **FILED:** | **March 23, 2012** |
| **THEREON** it is **ORDERED** that the motion is **DENIED**. | |

| | |
|---|---|
| **MOTION:** | **DEFENDANTS DAVID STRINGHAM AND REFERRAL EXPERTS, LLC'S MOTION TO STRIKE DECLARATION OF GEOFFREY COOK (Doc. No. 35)** |
| **FILED:** | **April 16, 2012** |
| **THEREON** it is **ORDERED** that the motion is **GRANTED**. | |

I.      **BACKGROUND.**

On August 2, 2011, Triaxial Medical, Inc. (the "Plaintiff") filed a complaint against David Stringham, Referral Experts, LLC, ("REL"), and Beverly Hills Physicians Associates ("BHPA") alleging copyright infringement.  Doc. No. 1.  Plaintiff is a Florida corporation with its principal place of business in Melbourne, Florida.  Doc. No. 1 at 2.  Stringham and REL are residents of Utah, and BHPA is a California corporation within its principal place of business in Beverly Hills, California.  Doc. No. 1 at 2.

On November 30, 2011, Stringham and REL (hereinafter, collectively the "Defendants") filed a motion to dismiss for lack of personal jurisdiction.  Doc. No. 17.  On February 22, 2012, the Court entered an order granting the motion in part and providing Plaintiff with leave to amend.  Doc. No. 22 at 9.[1]  On March 6, 2012, Plaintiff filed an amended complaint (the "Complaint") for copyright infringement.  Doc. No. 23. In the Complaint, Plaintiff alleges that this Court has specific personal jurisdiction over Defendants pursuant to Florida's long-arm jurisdiction statute, which provides for personal jurisdiction over a non-resident defendant who commits "a tortuous act within this state."  Fla. Stat. § 48.193(1)(b) (emphasis added).

Plaintiff alleges that Defendants intentionally infringed Plaintiff's copyright in the work embodied in U.S. Registration No. TX-6-899-442, entitled "LabiaplastySurgeon.com" (the "Work"), which relates to female cosmetic genital surgery ("FCGS").  Doc. No. 23 at 3. Geoffrey Cook, Plaintiff's owner, wrote the Work and published it on Plaintiff's website www.labiaplastysurgeon.com "as early as December 2008."  Doc. No. 23 at ¶¶ 13-15.  Plaintiff

---

[1] The Court found that Plaintiff failed to meet its burden to sufficiently plead personal jurisdiction over the Defendants by not alleging, even in conclusory fashion, that Defendants "expressly aimed their intentional copyright infringement at Florida or that Defendants could reasonably anticipate that their conduct would cause injury in Florida."  Doc. No. 22 at 7.

attaches the copyright registration, which states that the Work was completed in 2008 and was first published on December 4, 2008. Doc. No. 23-1 at 2. For a monthly average fee of $1,000.00, Plaintiff allows subscribing surgeons to use the Work and lists those surgeons on its website. Doc. No. 23 at ¶¶ 46-47, 66. Prospective patients then use the website to research surgeons who perform FCGS and are listed on the website. *Id*. at ¶ 66. Therefore, the Work is used on the website to drive prospective patients, who are seeking FCGS services, to Plaintiff's subscribing surgeons. Plaintiff alleges FCGS "is among the fastest growing procedures in the world, and that its website is "globally considered to be the number one portal dealing with [FCGS]." Doc. No. 23 at ¶ 14.

Plaintiff alleges Defendants operate a competing business and "essentially identical" services, which licenses content for websites owned and operated by cosmetic surgeons, and lists subscribing surgeons on their own website. Doc. No. 23 at ¶¶ 22, 61. Plaintiff maintains that Defendants copied the Work from Plaintiff's website, reproduced it on their website www.lookingyourbest.com, and on over 30 Global Free Internet Article Distribution Services. Doc. No. 23 at ¶¶ 10, 23, 33, 40. More specifically, Plaintiff alleges that Defendants willfully "copied the Work verbatim, loaded the content onto BHPA's website, [and the 30 other Global Free Internet Article Distribution Services,] and sold [subscriptions to] surgeons to use the [Work]." Doc. No. 23 at ¶¶ 23, 40. Plaintiff acknowledges that "Defendants claim that they merely copied the Work form [BHPA], at the end of 2008, when the infringement [allegedly] occurred. However, . . . Defendant [BHPA] did not have [the Work] on their website in either July, August or September 2008, when it was first republished and redistributed by the Defendants, refuting any claim of innocent infringement and further undermining [Defendants'] argument of unintentional use." Doc. No. 23 at ¶ 77. Thus, Plaintiff alleges that Defendants

willfully copied the Work from Plaintiff's website and sold it to BHPA rather than unintentionally copying it from BHPA's website because the Work was not published on BHPA's website until after the alleged acts of infringement occurred. *Id. See also* Doc. No. 23 at ¶ 33.

Plaintiff alleges that it has contacted Defendants directly regarding the alleged copyright infringement, but Defendants threatened Plaintiff with claims of disparagement and unfair business practices and have otherwise ignored Plaintiff's demands to cease and desist. *Id*. at ¶¶ 25-26, 35, 79. Plaintiff also alleges that Defendants have wrongfully claimed authorship and ownership of the Work. Doc. No. 23 at ¶ 36-37. Plaintiff contends that Stringham has "publically claimed that he is the owner of the copyright, and that he is the author if [sic] the Work," including by "contacting specific surgeons who are listed on Plaintiff's website and telling them that Cook is not the author." *Id*. at ¶¶ 36, 39.

Plaintiff alleges damages because Defendants' misconduct has: 1) "driv[en] patient traffic to [Defendants'] website"; 2) "divert[ed] patients who are either looking for Plaintiff or who would have found Plaintiff['s] website if Defendants did not steal the Work"; and 3) "greatly [improved their] search ranking in GOOGLE in a 'hot' cosmetic surgical market by using the Work." Doc. No. 23 at ¶ 43. Plaintiff also alleges that:

> These acts have caused Plaintiff's website traffic to drop significantly, resulting in lost sales that would otherwise have been consummated. The industry accepted standard patient-to-procedure conversion rate is 3-4%, and based on statistical and historical evidence, Plaintiff has lost in excess of 25,000 hits, which should have resulted in hits to Plaintiff's subscribing surgeons. Plaintiff's subscribing surgeons pay an average of $1,000 per month to use the Work. Defendants . . . have in or around 70 surgeons that subscribe to their service, and each would have had to pay Plaintiff for the right to display, reproduce, or otherwise exploit the Work. Plaintiff's loses could be in excess of $70,000.00, per month, and mounting.

Doc. No. 23 at ¶¶ 44-48.   Thus, in addition to the loss of web traffic, Plaintiff alleges that

Defendants' alleged infringement of the Work has resulted in losses in excess of $70,000.00 per

month in lost subscriptions that, but for Defendants' acts of infringement, Plaintiff would have

been entitled.   *Id*.   Plaintiff also alleges that Defendants have travelled to Florida to attend

medical conferences and to actively solicit new customers in Florida.   *Id*. at ¶¶ 68-70.

## II.    JURISDICTIONAL ALLEGATIONS.

The Complaint contains numerous allegations related to the Court's personal jurisdiction

over the Defendants.   More specifically, Plaintiff alleges:

> This Court has personal jurisdiction over the Defendants pursuant
> to Florida Statute § 48.193(1)(b), in that the Defendants have
> committed tortuous acts outside of the state that have caused injury
> in Florida, and Defendants have committed tortuous acts by
> sending telephonic, electronic, and/or written communications into
> Florida, and the cause of action arises out of these
> communications.   Defendants operate various websites that contain
> the Work, and these websites are both accessible, and accessed in
> Florida.   These websites and the services offered are specifically
> directed to Florida and are used to offer the services of over 50
> Florida surgeons.

Doc. No. 23 at ¶ 7.[2]   Thus, Plaintiff alleges that Defendants' website is both accessible and

accessed in Florida, and that the Defendants' activities are specifically directed at Florida.   *Id*. at

¶ 10.   Plaintiff asserts that "Defendants had actual knowledge that Plaintiff maintained its

principal place of business in Florida, and Defendants specifically targeted Florida surgeons in

Plaintiff's local area."   *Id*. at ¶ 57.

Plaintiff asserts that Defendants' clients are "either patients, or surgeons who pay

inclusion fees to be listed on Defendants' websites," and "the 50 surgeons that Defendants' [sic]

---

[2] Section 48.193(1)(b), Florida Statutes provides: "Any person, whether or not a citizen or resident of this state, who personally or through an agent  [commits a tortuous act within this state] thereby submits himself . . . to the jurisdiction of the courts of this state. . . ."  Fla. Stat. § 48.193(1)(b).

reference that reside in the State of Florida, actively use Defendants' website to reach the consuming public and offer them the identical services offered by [Plaintiff]. . . ." *Id*. at ¶¶ 59-60.  Plaintiff maintains that Defendants have solicited Florida surgeons by "contacting them via telephone, email, and via the use of the internet. . . ." *Id*. at ¶ 52.

III.     <u>**THE MOTION, RESPONSE AND REPLY**</u>.

On March 23, 2012, Defendants filed a Motion to Dismiss Complaint for Lack of Personal Jurisdiction (the "Motion").  Doc. No. 30.  In support of the Motion, Defendants attach Stringham's affidavit.  Doc. No. 30-1 at 1-11.  Stringham avers that he is the manager of REL and it has no offices, employees, real or personal property, or a telephone listing in Florida.  Doc. No. 30-1 at ¶¶ 4, 6.  Generally, the affidavit maintains that Defendants did not commit an intentional tort directed at Florida because Defendants did not copy the Work from Plaintiff's website, but from BHPA's website, whom hired Defendants to perform website optimization services, and  Defendants assumed BHPA owned the rights to the Work.  Doc. No. 30-1 at ¶¶ 8(f), 8(i), 8(k), 8(m), 8(t), 16-18.  However, Stringham's affidavit fails to state the information contained therein is based upon his own personal knowledge.  Doc. No. 30-1.  Based solely on Stringham's affidavit and the exhibits attached thereto, Defendants maintain that the Court lacks personal jurisdiction over them.  Doc. No. 30.

On April 6, 2012, Plaintiff filed a response (the "Response").  Doc. No. 33.  In support, Plaintiff attaches the affidavit of its president, Geoffrey Cook.  Doc. No. 33-1.  Generally, Cook denies the facts alleged in Stringham's affidavit and restates the allegations contained in the Complaint.  Doc. No. 33-1.  However, the affidavit fails to state that it is based on Cook's personal knowledge.  Doc. No. 33-1.  In addition, the affidavit cites to numerous exhibits, which are not attached to the Response.  Doc. No. 33-1.

On April 30, 2012, Defendants filed a reply (the "Reply") arguing that Cooks affidavit is not based on personal knowledge and Plaintiff has failed to come forth with facts contradicting Stringham's affidavit.  Doc. No. 37.  Therefore, Defendants maintain that Plaintiff has failed to come forth with sufficient evidence which would warrant the Court's exercise of personal jurisdiction over the Defendants.  *Id.*

## IV.   MOTION TO STRIKE.

On April 16, 2012, Defendants filed a motion to strike (the "Motion to Strike") Cook's affidavit arguing that it is "redundant, immaterial and impertinent," "not made on personal knowledge," and "merely repeats the allegations in the [Complaint]."  Doc. No. 35 at 2.  On April 30, 2012, Plaintiff filed a response arguing the Motion to Strike should be denied because the purpose of Cook's affidavit is to offer evidence in support of the Response to the Motion, and it "specifically controverts assertions made by Stringham [in] his affidavit."  Doc. No. 38 at 2.  Plaintiff maintains that Defendants have alleged no prejudice that they will suffer if the Court considers Cook's affidavit in its determination of the Motion.  Doc. No. 38 at 3.  As to Defendants' assertion that Cook's affidavit is not based on personal knowledge, Plaintiff contends that it "contains personal testimony based on his actual experience and also based on his complete understanding of the facts as he has researched them, or otherwise learned through communications with Defendants."  Doc. No. 38 at 4.  Thus, Plaintiff requests that the Motion to Strike be denied.

## V.   PERSONAL JURISDICTION.

Personal jurisdiction is an essential element of the Court's authority and without it the Court is "powerless to proceed to an adjudication."  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).  A district court sitting with federal question jurisdiction, such as a copyright

infringement case, may properly exercise personal jurisdiction over a non-resident defendant only if two requirements are met: 1) the exercise of jurisdiction is appropriate under Florida's long-arm statute; and 2) the exercise of personal jurisdiction satisfies traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment. *See International Shoe Co. v. Washington*, 326 U.S. 310 (1945); *Posner v. Essex Insurance Company, LTD.*, 178 F.3d 1209, 1214 (11th Cir. 1999); *Sculptchair, Inc. v. Century Arts, LTD.*, 94 F.3d 623, 626 (11th Cir. 1996); *Malibu Media, LLC v. John Does 1-25*, 2012 WL 3940142 at *4 (N.D. Fla. Aug. 21, 2012) (applying *Posner* and *Sculptchair* standard to federal copyright infringement case).

As explained by the Eleventh Circuit in *Madara v. Hall*, 916 F.2d 1510, 1516 n. 7 (11th Cir. 1990), there are two types of personal jurisdiction: specific and general.  The Eleventh Circuit stated:

> Specific personal jurisdiction is founded on a party's contacts with the forum state that are related to the cause of action.  General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation.  *Helicopteros Nacionales de Columbia, N.A. v. Hall*, 466 U.S. 408, 414 nn. 8 & 9 (1984).

In this case, the Court will focus on specific personal jurisdiction. *See Smith v. Trans-Siberian Orchestra*, 728 F.Supp.2d 1315, 1323 (M.D. Fla. 2010) (factually analogous case focusing on specific personal jurisdiction where plaintiff brought suit against non-resident defendant for copyright infringement and alleged personal jurisdiction under Florida Statutes § 48.1931(1)(b)).

## VI.  ANALYSIS.

### A.  The Burden.

In addressing a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the initial burden of pleading sufficient facts to make out a prima facie case supporting personal

jurisdiction. *Posner*, 178 F.3d at 1214.  If the plaintiff makes a prima facie case, the burden then shifts to the defendant to come forth with affidavits or other evidence demonstrating a "meritorious challenge to personal jurisdiction."  *Sculptchair, Inc.*, 94 F.3d at 627 (internal quotations omitted).   Only if the defendant raises a meritorious challenge to jurisdiction does the burden then shift back to the plaintiff to prove by affidavit, testimony, or documents the basis for personal jurisdiction.  *Posner*, 178 F.3d at 1214. The defendant's affidavit must contain more than conclusory or cursory allegations refuting jurisdiction.  *Celorio v. Google Inc.*, 2012 WL 1802091 at *1 (N.D. Fla. Apr. 30, 2012).  If the burden shifts back to the plaintiff, the plaintiff "must set forth specific facts showing that the court has jurisdiction."  *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974).

If an affiant avers that his or her statements contained in a declaration are based on personal knowledge, then the Court will consider them. *Homebingo Network, Inc. v. Chayevsky*, 428 F.Supp.2d 1232, 1238 (S.D. Ala. 2006). However, in this case, neither Plaintiff's nor Defendants' affidavits state that they are based on the affiants' personal knowledge.  Doc. Nos. 30-1; 33-1.  "An affidavit may only be considered to the extent that it is based on personal knowledge."  *Homebingo Network,* 428 F.Supp.2d at 1238 (citing Rule 602, Fed.R.Evid).  For example, in *Posner*, 178 F.3d at 1215, in considering a motion to dismiss for lack of personal jurisdiction, the Eleventh Circuit refused to consider any conclusory allegations or factual declarations which were not specifically based on the affiant's personal knowledge. *Id*. Because the affidavits at issue in this case fail to state that they are based on the respective affiant's personal knowledge and both contain numerous conclusory allegations, they are inadmissible evidence and the Court will not consider them. *See* Fed.R.Evid. 602; *Posner*, 178 F.3d at 1215. Accordingly, because the Defendants have failed to come forth with sufficient evidence

demonstrating a meritorious challenge to personal jurisdiction, the Court will only consider whether the allegations in the Complaint make prima facie showing of personal jurisdiction.

### B.  Florida's Long-Arm Statute.

The Complaint alleges that the Defendants committed tortuous acts in Florida by copying the Work, publishing it on their website and throughout the internet, and utilizing the Work to solicit surgeons in Florida to subscribe to their website.  Doc. No. 23. "Copyright infringement is widely recognized as a tortuous act within the context of [Section] 48.193(1)(b)."  *Smith*, 728 F.Supp.2d at 1320 (citing *Bangor Punta Operations v. Universal Marine Co*., 543 F.2d 1107, 1109 (5th Cir. 1976)).  Thus, as to the application of Florida's long arm statute, the issue is whether Defendants alleged copyright infringement occurred "within this state."

As noted in the Court's prior order, there has been "a split of authority among Florida courts concerning" whether a tortuous act committed outside the state resulting in injury within Florida satisfies Section 48.193(1)(b), Florida Statutes.  Doc. No. 22 at 3 (citing *Posner*, 178 F.3d at 1216-17 (explaining the division among Florida courts)).   Several of Florida's intermediate level appellate courts have held that the occurrence of an injury alone in Florida does not satisfy Section 48.193(1)(b), but other Florida appellate courts have held that tortuous conduct calculated to cause injury in Florida does satisfy the statute.  *Posner*, 178 F.3d at 1216. The Eleventh Circuit has consistently applied a broad construction of Section 48.193(1)(b), holding that it extends jurisdiction over tortuous acts outside the state that cause injury in Florida.  *Posner*, 178 F.3d at 1216-17.  *See also* Doc. No. 22 at 3

In *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002), the Florida Supreme Court held that a defendant does not have to be physically present in Florida to commit a tortuous act within the state.  *Id*.  The Florida Supreme Court held that by making or sending telephonic, electronic,

or written communications into Florida a non-resident defendant can commit a tortuous act within the state under Section 48.193(1)(b), but "the cause of action must arise from the communications." *Id*. at 1260.[3]

More recently, the Florida Supreme Court held that an allegedly defamatory website posting by a non-resident defendant could constitute a tortuous act within the state of Florida. *Internet Solutions Corporation v. Marshall*, 39 So.3d 1201, 1210-16 (Fla. 2010).   The Florida Supreme Court summarized the case law in this context as follows:

> A review of the relevant case law reveals that courts interpreting Florida law in the context of the Web have applied differing approaches. Some courts appear to have interpreted *Wendt's* statement that "'committing a tortious act' in Florida under section 48.193(1)(b) can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida," 822 So.2d at 1260, as requiring that the defendant direct the communications into Florida or otherwise <u>target</u> Florida. *Renaissance Health Publ'g, LLC*, [*v. Resveratrol Partners, LLC*, 982 So.2d 739, 740 (Fla. 4th DCA 2008)] (interactive website that sells product to Florida residents <u>targeted</u> Florida residents); *see Whitney Info. Network, Inc*. [*v. Xcentric Ventures, LLC*, 347 F.Supp.2d 1242, 1245 (M.D. Fla. 2004)] (defendant's website was not a mere passive website). At least one other court, however, has taken a far more expansive view by holding that merely posting material online "is an electronic communication accessible to Florida residents." *Richards* [*v. Sen*, 2008 WL 4889623 at *4 (S.D. Fla. Nov. 12, 2008)].

*Internet Solutions Corporation*, 39 So.3d at 1213-14 (emphasis added).   Thus, as the Florida Supreme Court explained, some courts have focused on website activity that specifically targets Florida residents, while other courts have adopted a broader test, which focuses on whether the

---

[3] In *Wendt*, 822 So.2d at 1253 n. 2, the Florida Supreme Court stated:

> We do not decide the broader issue of whether injury alone satisfies the requirement of section 48.193(1)(b), as that issue is not the basis for this Court's jurisdiction. However, we note that the federal courts that have addressed this issue, although acknowledging the confusion among Florida's district courts, have adopted a broad construction of section 48.193(1)(b), holding that the commission of torts out of state that cause an injury to an in-state resident satisfies Florida's long-arm statute.

*Id*.

website is accessible in Florida.  *Id.  See also Smith v. Trans-Siberian Orchestra*, 728 F.Supp.2d 1315, 1321-22 (M.D. Fla. 2010) (explaining the targeting and accessibility tests).

The Florida Supreme Court noted that the tort at issue was "committed in the place where the defamatory material is published."  *Id*.  Therefore, because the place of publication is where the tort was committed, the Court held:

> We conclude that <u>posting defamatory material on a website alone does not constitute the commission of a tortuous act within Florida</u> for purposes of section 48.193(1)(b), Florida Statutes.  <u>Rather, the material posted on the website</u> about a Florida resident <u>must not only be accessible in Florida, but also be accessed in Florida in order to constitute the commission of tortuous act of defamation within Florida</u> under section 48.193(1)(b). . . .
>
> <u>When the posting is . . .  accessed by a third party in Florida, the material has been "published" in Florida and the poster has communicated material "into" Florida, thereby committing the tortuous act of defamation within Florida.</u>

*Id*. at 1203, 1214-15 (emphasis added).   Thus, the Court held the requirements of Section 48.193(1)(b) were met because the website posting was be both <u>accessible and accessed</u> in Florida.

In *Smith v. Tran-Siberian Orchestra*, 728 F.Supp.2d 1315, 1318,1320-23 (M.D. Fla. 2010), the Court did not apply the accessed test from *Internet Solutions* because the underlying motion was filed before the Florida Supreme Court's decision was released.   The Court considered each of the above-stated tests in the context of a copyright infringement claim where the copyrighted image at issue was posted for sale on the internet.  *Id*.  The Court stated that the "targeting test" had only been applied "where a website has been used as a vehicle for libel."  *Id*. at 1322 (internal citations omitted).   The accessibility test on the other hand "is generally reserved for cases of online intellectual property infringement."  *Id*.  The Court stated that it "has

not found a single online intellectual property infringement case adopting the targeting test." *Id.*

Thus, the Court applied the accessibility test. *Id.*

In applying the accessibility test in *Smith*, the Court noted that the case was factually

similar to *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008). The Court stated:

> In *Licciardello*, a personal manager for music artists posted a
> musician's trademarked name and picture on his website without
> permission. 544 F.3d at 1282. Reviewing a motion to dismiss the
> musician's trademark infringement claim, the *Licciardello* court
> found personal jurisdiction under 48.193(1)(b) valid because the
> music manager's website was accessible in Florida. *Id.* at 1283; *see
> HME Providers, Inc. v. Heinrich*, 2010 WL 557106, at *2-3.
>
> Like *Licciardello*, Smith has brought an intellectual property
> infringement claim against Spiderwebart. While unlike
> *Licciardello*, Smith's claim involves copyright rather than
> trademark infringement, the differences in the legal standards for
> each does not affect this Court's decision to apply the accessibility
> test.
>
> Also, like *Licciardello*, Spiderwebart allegedly used its website as
> a vehicle to commit the infringement at issue. It is true
> Spiderwebart allegedly did so by selling a protected image through
> its website, and the music manager in *Licciardello* by posting a
> protected photo and name. 544 F.3d at 1282. Selling a protected
> image online, though, does not necessarily make it less accessible
> than posting it. To be sure, Spiderwebart's website almost
> invariably allows users to view an image prior to purchasing it.

*Smith*, 728 F.Supp.2d at 1322-23 (some internal citations omitted). Thus, the Court found the

use of the internet as a vehicle to commit the infringement was sufficient to satisfy the

requirements of Section 48.193(1)(b). *Id. See also Foreign Imported Productions and Pub., Inc.

v. Grupo Indus. Hotelero, S.A.*, 2008 WL 4724495 at *5 (S.D. Fla. Oct. 24, 2008) ("If copyright

infringement occurs on a website that is accessible in Florida, § 48.193(1)(b) is met even if the

website was created outside of Florida.") (citing *Licciardello*, 544 F.3d at 1283). For the reasons

stated below, whether the Court applies an accessibility or an accessed test the results are the

same.  Accordingly, the Court elects to apply the more rigorous accessed test used by the Florida

Supreme Court in *Internet Solutions* when evaluating whether Plaintiff has made a prima facie

case of personal jurisdiction under Section 48.193(1)(b).

In this case, Defendants allegedly published the Work on their website, as well as other

websites providing a back-link to Defendants' website, and the websites are accessible to third

parties in Florida, including physicians and prospective patients. Doc. Nos. 23 at ¶¶ 10, 23, 33,

40, 52, 59-60. The tort of copyright infringement generally occurs at the place of "passing off"

the allegedly infringing item to consumers, which is typically the place of sale or reproduction of

the infringing item instead of the location where the intellectual property was copied or created.

*Precision Software Services, Inc. v. Fortune Financial Systems, Inc*., 1998 WL 1759759 at *4

(M.D. Fla. Nov. 9, 1998).  Similar to the facts in *Licciardello* and *Smith*, by allegedly posting the

Work on their website, utilizing it to secure subscriptions from Florida surgeons and to drive

prospective patients in Florida who view the Work on Defendants' website to those surgeons,

Defendants have used their website "as a vehicle to commit the infringement at issue."  *Smith*,

728 F.Supp.2d at 1322-23.  The alleged copyright infringement occurred when the Work was

made available to Florida residents through the Defendants' website, which was accessible in

Florida, and the cause of action arises from those electronic communications. *See Wendt*, 822

So.2d at 1260.   Accordingly, Plaintiff has satisfied the requirements of Florida's long-arm

statute.

### C.  Due Process.

"Even though a statute may permit a state to assert jurisdiction over a non-resident

defendant, the due process clause of the United States Constitution protects an individual's

liberty interest in not being subject to the binding judgments of a forum with which he has

established no meaningful 'contacts, ties or relations.'" *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008) (quoting *International Shoe Co*., 326 U.S. at 319). The Court is prohibited from exercising personal jurisdiction over a non-resident defendant "unless his contacts with the state are such that he has fair warning that he may be subject to suit there." *Licciardello*, 544 F.3d at 1284 (internal quotations omitted). Thus, a defendant is subject to jurisdiction in Florida so long as the following two part test is satisfied: 1) sufficient minimum contacts exist between the defendant and Florida; and 2) the forum's exercise of jurisdiction does not offend fair play and substantial justice. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980); *Posner*, 178 F.3d at 1220; *Vermeulen v. Renault, U.S.A., Inc*., 985 F.2d 1534, 1545 (11th Cir. 1993).

### 1. Minimum Contacts.

In *Calder v. Jones*, 465 U.S. 783 (1984), a California resident sued the National Enquirer and two of its writers, all Florida residents, for libel in California state court regarding an article they published in the magazine, which was distributed nationwide. *Id*. at 784-786. The writers sought to quash service of process against them, arguing that they lacked sufficient minimum contacts with California to be haled into court there. *Id*. at 788-89. The writers also argued that they were not responsible for the magazine's circulation in California, had no economic stake in the magazine's sale there, and they could not control the National Enquirer's marketing in California. *Id*. Thus, the writers maintained that while it was foreseeable that the article would have an effect in California, foreseeability alone was insufficient for the forum to exercise personal jurisdiction over them. *Id*.

The United States Supreme Court held:

> In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation."

> *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53
> L.Ed.2d 683 (1977). *See also Rush v. Savchuk*, 444 U.S. 320, 332,
> 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980). The plaintiff's lack of
> "contacts" will not defeat otherwise proper jurisdiction, but they
> may be so manifold as to permit jurisdiction when it would not
> exist in their absence. Here, the plaintiff is the focus of the
> activities of the defendants out of which the suit arises. *See McGee
> v. International Life Ins. Co*., 355 U.S. 220, 78 S.Ct. 199, 2
> L.Ed.2d 223 (1957).
>
> The allegedly libelous story concerned the California activities of a
> California resident. It impugned the professionalism of an
> entertainer whose television career was centered in California. The
> article was drawn from California sources, and the brunt of the
> harm, in terms both of respondent's emotional distress and the
> injury to her professional reputation, was suffered in California. In
> sum, California is the focal point both of the story and of the harm
> suffered. Jurisdiction over petitioners is therefore proper in
> California based on the "effects" of their Florida conduct in
> California. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.
> 286, 297-298, 100 S.Ct. 559, 567-568, 62 L.Ed.2d 490 (1980);
> Restatement (Second) of Conflicts of Law § 37.

*Calder*, 465 U.S. at 788-89.  In rejecting the writers' arguments about their lack of minimum

contacts with California and foreseeability, the Court stated:

> [T]heir intentional, and allegedly tortious, actions were expressly
> aimed at California. Petitioner South wrote and petitioner Calder
> edited an article that they knew would have a potentially
> devastating impact upon respondent. And they knew that the brunt
> of that injury would be felt by respondent in the State in which she
> lives and works and in which the National Enquirer has its largest
> circulation. Under the circumstances, petitioners must "reasonably
> anticipate being haled into court there" to answer for the truth of
> the statements made in their article. *World-Wide Volkswagen Corp.
> v. Woodson*, 444 U.S., at 297, 100 S.Ct., at 567; *Kulko v. Superior
> Court*, 436 U.S. 84, 97-98, 98 S.Ct. 1690, 1699-1700, 56 L.Ed.2d
> 132 (1978); *Shaffer v. Heitner*, 433 U.S. 186, 216, 97 S.Ct. 2569,
> 2586, 53 L.Ed.2d 683 (1977). An individual injured in California
> need not go to Florida to seek redress from persons who, though
> remaining in Florida, knowingly cause the injury in California.

*Calder*, 465 U.S. at 789-90.  Thus, in *Calder*, the United States Supreme Court focused on the intentionally tortuous conduct alleged, its relationship to the forum, and the effect in the forum caused by the conduct.  *Id.*

It is now well settled that in intentional torts cases the so-called "Calder effects test" applies in evaluating minimum contacts for due process purposes.  *Smith*, 728 F.Supp.2d at 1323 (citing *Calder*, 465 at 788-89).  "[I]n its broadest construction, the effects test requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1221 n. 28 (11th Cir. 2009).  "Applying the [*Calder* effects test] to intentional tort cases is justified by the fact that states have a special interest in exercising jurisdiction over those who commit intentional torts causing injury to their residents."  *Smith*, 728 F.Supp.2d at 1323-24 (citing *Licciardello*, 544 F.3d at 1286).

As to the intentional tort element, the undersigned finds that the facts of this case are analogous to the facts in *Brayton v. Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1126-28 (holding that the intentional tort element is "easily satisfied" because plaintiff alleges that defendant committed an intentional tort by copying plaintiff's intellectual property and posting on defendant's website) and *Smith*, 728 F.Supp.2d at 1324 (first requirement of *Calder* effects test satisfied where defendant allegedly sold infringing copyright material over website). In this case, although Defendants deny the merits of the claim, Plaintiff alleges that Defendants infringed upon Plaintiff's exclusive right to the Work by intentionally and knowingly copying it and publishing on 30 Global Free Internet Article Distribution Services and Defendants' website – www.lookingyourbest.com.  Doc. No. 23 at ¶¶ 10, 23, 33, 40. Plaintiff also alleges that Defendants used the Work on its website to drive prospective patients to Defendant's subscribing

surgeons, which resulted in diverting prospective patients from Plaintiff's subscribing surgeons. Doc. No. 23 at ¶ 43.  Thus, Plaintiff alleges that Defendants intentionally copied the Work and posted it on the internet and their own website in an attempt to profit from Work.   Accordingly, the Court finds that Plaintiff has satisfied the first step of the *Calder* effects test.

As to the second requirement, whether Defendants' tortuous conduct was expressly aimed at the forum, the Court finds that the facts of *Licciardello*, 544 F.3d at 1282-83, 1287-88, are analogous.  In *Licciardello*, 544 F.3d at 1282-83, the plaintiff sued a non-resident defendant for trademark infringement regarding information published on the defendant's website.   *Id.* Applying the effects test, the Eleventh Circuit held:

> In this case, <u>Lovelady is alleged to have committed an intentional tort against Carman-using his trademarked name and his picture on a website accessible in Florida</u> in a manner to imply Carman's endorsement of Lovelady and his products. The use was not negligent, but intentional. The purpose was to make money from Carman's implied endorsement. <u>The unauthorized use of Carman's mark, therefore, individually targeted Carman in order to misappropriate his name and reputation for commercial gain</u>. <u>These allegations satisfy the *Calder* effects test for personal jurisdiction</u>-the commission of an intentional tort, <u>expressly aimed at a specific individual in the forum whose effects were suffered in the forum. The Constitution is not offended by the exercise of Florida's long-arm statute to effect personal jurisdiction over Lovelady because his intentional conduct in his state of residence was calculated to cause injury to Carman in Florida</u>. *See Calder*, 465 U.S. at 791, 104 S.Ct. 1482. Lovelady cannot now claim surprise at being haled into court here. *See id*. at 789-90, 104 S.Ct. 1482.

*Licciardello*, 544 F.3d at 1287-88 (emphasis added). Thus, because the alleged trademark infringement specifically targeted a resident of the forum and was intended to produce commercial gain, the Eleventh Circuit found that the allegations satisfied the second prong of the *Calder* effects test.  *Id.*

Similarly, in *Smith,* 728 F.Supp.2d at 1322-24 where the defendant allegedly used its website as a vehicle to commit copyright infringement, the Court stated the following regarding the second requirement of the *Calder* effects test:

> Smith's factual allegations also appear to satisfy the second requirement that the defendant's tortious act be expressly aimed at the forum state. A defendant's tortious act is aimed at the forum state, if it is directed at a resident of the forum. *Licciardello,* 544 F.3d at 1287 (quoting New Lenox Indus. v. Fenton, 510 F.Supp.2d 893, 904 (M.D.Fla.2007)). In *Licciardello,* the court held that a manager's unauthorized use of a resident music artist's trademarked name and picture on his website, implying said artist's endorsement of his skills as a manager, individually targeted the artist in the forum state. *Id.* at 1282, 1287-1288.
>
> Like *Licciardello,* Spiderwebart allegedly misappropriated a protected image owned by Smith. Although the image contains no depiction of Smith, <u>the issue</u> is not whether Spiderwebart used a copyright image representing or making reference to Smith but, rather, <u>is whether its use of that image was directed at Smith.</u> <u>Smith has alleged that the Rose Guitar image is registered</u> with the U.S. Copyright Office; <u>that Spiderwebart has been on notice of its</u> <u>infringement</u> since Greg Hildebrandt, the president of Spiderwebart, was named as a defendant in this case; <u>and that it</u> <u>continues to engage in the averred infringement.</u> Smith submits that Spiderwebart perpetrated the copyright infringement in reckless disregard of his rights or, alternatively, that it did so maliciously. <u>These allegations establish that Spiderwebart's</u> <u>purported infringement was aimed at Smith, a resident of Florida,</u> <u>satisfying the effects test's second element.</u>

*Smith*, 728 F.Supp.2d at 1324 (emphasis added).   Thus, because plaintiff alleged that the defendant used the protected of plaintiff knowingly or in reckless disregard of the plaintiff's rights, the allegations were sufficient to show that the defendant expressly aimed its conduct at a resident of Florida. *Id*.

In this case, Plaintiff has alleged that Defendants, with knowledge that Plaintiff owned the rights to the Work and was a resident of Florida, purposefully copied the Work and published on their website and other websites, which were accessed in Florida, in order to directly compete

with Plaintiff's business by obtaining subscriptions from Florida surgeons who perform FCGS and to drive patients in Florida to those surgeons.  Doc. No. 23 at ¶¶ 7, 10, 22-25, 35-36, 40-42, 52-57, 59-60, 63-64.  These facts are sufficiently analogous to the fact of *Licciardello* and *Smith* to warrant the same result.  Thus, the Court finds that Plaintiff has satisfied the second requirement of the *Calder* effects test.

The third requirement of the *Calder* effects test is that the Plaintiff suffer an injury within the forum.   Plaintiff has alleged that as a result of Defendants' alleged misconduct, it has suffered the following: loss of prospective patient web traffic; loss of subscription revenue, and damage to its reputation as the number one portal dealing with FCGS.  Doc. No. 23 at ¶¶ 43-48. In *Smith*, 728 F.Supp.2d at 1324, the court determined that the third requirement had been met because the defendant's sale of the copyrighted image allegedly denied the plaintiff the opportunity to profit from the image.   *Id*.  Here, Plaintiff has adequately alleged that it has lost subscriptions or revenue that it otherwise would have been entitled to if Defendants had not copied the Work and utilized it to compete with Plaintiff's business.   Accordingly, the Court finds that Plaintiff's allegations satisfy the third requirement of the *Calder* effects test.

### 2.  Fair Play and Substantial Justice.

Having found that Defendants' contacts satisfy the minimum contacts requirement, the Court must now consider whether the exercise of personal jurisdiction over the Defendants is fair and just.  The following factors are relevant to this inquiry: 1) the burden on the defendant of defending the suit in Florida; 2) Florida's interest in adjudicating the suit; and 3) the plaintiff's interest in obtaining effective relief.  *Sculptchair, Inc.,* 94 F.3d at 631; *Posner*, 178 F.3d at 1221. Where these factors do not "militate against otherwise permitted jurisdiction, the Constitution is not offended by its exercise."  *Licciardello*, 544 F.3d at 1284.

In *Smith*, 728 F.Supp.2d at 1325, the Court stated:

> Upon reviewing the circumstances of the case, considerations of fair play and substantial justice do not render personal jurisdiction over Spiderwebart unreasonable. Although Spiderwebart's employees and sole office are located in New Jersey, and the burden on Spiderwebart in having to defend a suit in Florida would be great, this burden is more than outweighed by Smith's strong interest in obtaining convenient and effective relief from the alleged copyright infringement. Smith submits that Spiderwebart's copyright infringement and its acts of unfair competition have caused him irreparable injury, and, as of yet, the complained-of infringement has not ceased.
>
> Assuming that Smith's allegations are true, the injury to his reputation and business is rendered more acute with each passing day that he does not receive relief from this Court. Finally, the state has a very strong interest in exercising jurisdiction over those who commit intentional torts causing injury to their residents. *See Licciardello*, 544 F.3d at 1286 (citing Keeton, 465 U.S. at 776-777, 104 S.Ct. 1473).

*Id*. Thus, despite the fact the burden on the defendant to defend the suit in Florida was great, the *Smith* court found that burden was outweighed by the plaintiff's strong interest in obtaining relief and the forum's interest in exercising jurisdiction over those who commit intentional torts causing injury its residents.  *Id*.

In the Motion and even in Stringham's affidavit, the Defendants fail to offer any argument or evidence that the exercise of personal jurisdiction over the Defendants would place any burden on the Defendants.  Doc. Nos. 30, 30-1.  In contrast, Plaintiff has a strong interest in obtaining efficient and convenient relief in this forum and Florida "has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of non-residents causing injury in Florida." *Licciardello*, 544 F.3d at 1288.   Accordingly, the Court finds that the Constitution is not offended by the Court's assertion of jurisdiction over the alleged non-resident tortfeasors.  *Id*.

VII.    **CONCLUSION**.

Based on the foregoing, it is **ORDERED** that:

1.  The Motion is **DENIED** (Doc. No. 30);

2.  The Motion to Strike is **GRANTED** (Doc. No. 35);

3.  Defendants shall respond to the Complaint within fourteen (14) days from the date of this order; and

4.  If this matter is renewed, the parties shall provide affidavits containing statements of fact that are specifically based on the affiant's personal knowledge and do not contain conclusory statements of fact or law, and the parties shall attach all exhibits referenced therein.   In an abundance of caution, the parties, their counsel, and any affiants are warned that any statements of fact contained within supporting affidavits are subject to Rule 11 sanctions and should be carefully verified before filing. Inferences and conclusions based on those facts need not be drawn by the affiant, but are more appropriately argued by counsel. The failure to comply with this order will result in Court striking the motion, response, or both, and may result in sanctions.

**DONE and ORDERED** in Orlando, Florida on November 20, 2012.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy